UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VIVIANA ESPINOSA,

                                    Plaintiff,

                    -against-

WEILL CORNELL MEDICAL COLLEGE,

                                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/19/2021

18 Civ. 11665 (AT)

**ORDER**

ANALISA TORRES, United States District Judge:

In this employment discrimination case, Plaintiff, Viviana Espinosa, alleges that her

former employer, Weill Cornell Medical College, discriminated against her on the basis of her

gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et*

*seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 296 (the

"NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 (the

"NYCHRL"); and unlawfully retaliated against her for exercising her rights under these

statutes.  Compl., ECF No. 1.  Plaintiff also alleges that she was subjected to a hostile work

environment.  *Id.*  Before the Court is Defendant's motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56.  ECF No. 51.  For the reasons stated below, Defendant's

motion is GRANTED in part and DENIED in part.

# BACKGROUND[1]

Espinosa is a Latina in her mid-40s.  Espinosa Aff. ¶ 1, ECF No. 59-1.[2]  Defendant

employed Espinosa as a user interface developer in its web communications department,

beginning in January 2012, until she was fired in September 2017.  Def. 56.1 ¶¶ 3, 43, 142,

ECF No. 65.  Espinosa recalls that her team felt like an "old-boys club" and that atmosphere

was exacerbated after Defendant hired a new art director and manager, James Huntley, in

August 2012.  Pl. 56.1 ¶ 159, ECF No. 74;[3] Espinosa Aff. ¶ 4; Stockman Decl., Ex. EE ¶¶

14–15, ECF No. 53-34 ("EEOC Charge").  Espinosa states that Huntley showed "racey

videos" at the end of team meetings, Espinosa Aff. ¶ 5.  She asserts that Huntley screamed at

the team, banged his hands on the table, and that he used a patronizing voice.  Def. 56.1 ¶¶

100–01; Pl. 56.1 ¶¶ 160–61.  She recounts that he directed these behaviors towards her more

than the rest of the team.  Pl. 56.1 ¶ 160; EEOC Charge ¶¶ 18–19, 21, 24–30.

Espinosa received yearly performance evaluations.  ECF Nos. 53-11–53-12.  Her

evaluations in 2013 and 2014 noted that she generally "me[t] expectations," and was between

"fully competent" and "expert/role model" on five out of six categories of skills.  ECF No.

53-11 at 10–13; ECF No. 53-12 at 2–6.  In her 2014 evaluation, Huntley wrote that Espinosa

"has shown that she can perform tasks as requested of her."  ECF No. 53-12 at 6.

---

[1] Citations to a paragraph in either Rule 56.1 statement also include the other party's response and any sur-replies.
[2] Defendant argues that Espinosa's affidavit "contradict[s] her prior deposition testimony."  Def. Reply at 3–4.  The Court disagrees.  Espinosa's affidavit, her deposition testimony, and her verified complaint before the Equal Employment Opportunity Commission ("EEOC") are not inconsistent.  *Compare* Espinosa Aff. ¶ 6 ("Mr. Huntley had a problem with female employees") *with* Stockman Decl., Ex. EE ¶ 53, ECF No. 53-34 ("EEOC Charge") ("[H]e did not treat [a male employee] at all like the two women . . . on the team") *and* Espinosa Tr. at 322:21–24, ECF No. 53-3 ("[I]t seemed like he hired always women . . . because they were beautiful, cute or whatever").
[3] Defendant argues that Espinosa's Rule 56.1 statement contains unsupported allegations, legal conclusions, and contradictions to the record.  Def. Reply at 4–5, ECF No. 66.  Where Espinosa's "objections are unsupported by the record, they are conclusory and cannot create a genuine dispute of material fact."  *Mortimer v. Wilson*, No. 15 Civ. 7186, 2020 WL 3791892, at *6 (S.D.N.Y. July 7, 2020).  Accordingly, the Court will rely only on those statements that are free from these defects.  *See id.*

On several occasions before April 2015, Espinosa complained to Daniel Dickinson, the associate director of Defendant's web communications department, Def. 56.1 ¶ 3, about Huntley screaming at her. *See, e.g.*, Pl. 56.1 ¶¶ 166, 183–185, 188; Espinosa Tr. at 75:3–8; 222:13–224:25, ECF No. 53-3; EEOC Charge ¶¶ 70–72; Espinosa Aff. ¶¶ 19, 21.  On March 13, 2015, at a meeting with a human relations department representative, Espinosa complained that her performance evaluations were incorrect and that she was being targeted by Huntley, unlike other members of her team.  Pl. 56.1 ¶¶ 183–184; EEOC Charge ¶ 70.  About a month later, on April 21, 2015, Def. 56.1 ¶ 66, Espinosa received her annual review, which listed her as "need[ing] improvement," for the first time, and below "fully competent" in half of the skills categories.  ECF No. 53-12 at 10–15.  Despite these ratings, Huntley wrote that she "ha[d] shown great prowess in her ability to use" design software, ECF No. 53-12 at 13, that she was "an asset in support of Web Operations," *id.*, that she "continue[d] to work efficiently," *id.* at 14, that she was "a great team player," *id.* at 14, and that she was "valuable as a catch all for assistance to her peer designers as well as the adjacent [o]perations and [e]ngineering teams," *id.*  On May 14, 2015, she met with a different human resources official and immediately upon entering the office, Espinosa was told that "what [she] was experiencing was <u>not</u> discrimination," despite not having raised a discrimination claim. Espinosa Aff. ¶ 19 (emphasis in original); Stockman Decl., Ex. M at 2:16–19, ECF No. 53-14.

In 2016, Dickinson noted in Huntley's performance review that Huntley "continued to struggle with his anger" and that Dickinson "would like to see [Huntley] do a better job of containing his frustrations."  Pl. 56.1 ¶ 233.  Espinosa also believes that Dickinson was aware of and witnessed Huntley's behavior toward her because of the office layout, and that Dickinson failed to take appropriate corrective action.  EEOC Charge ¶¶ 35–38.

Espinosa appears to claim that Huntley treated her less favorably because of her appearance. She testified that Huntley hired women "because they were beautiful, cute or whatever." Espinosa Tr. at 322:21–24. She also testified that Huntley hired a female friend of his as a project manager, and that, "at some point during [a] meeting it came out that she was engaged or she had a boyfriend" and Huntley appeared disappointed. *Id.* at 322:4–20. One of her co-workers observed similar conduct, texting her that "[Huntley] seems to be ok w/ the blondes" and that she "noticed [his preference for some women] immediately." ECF No. 59-2 at 5.

Espinosa's 2016 and 2017 evaluations again ranked her highly: she was "fully competent," or between "fully competent" and "expert/role model" on a majority of the skills and company mission categories. ECF No. 53-12 at 17–22; ECF No. 53-11 at 2–9. On September 12, 2017, Defendant fired Espinosa for "persistent issues" with her performance. Def. 56.1 ¶¶ 140–42.

On June 22, 2018, Espinosa filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on race and national origin, and retaliation. Def. 56.1 ¶ 145. On September 7, 2018, Espinosa amended her EEOC charge to allege gender discrimination only. *Id.* ¶ 146. Espinosa commenced this action on December 13, 2018, alleging unlawful discrimination on the basis of her gender in violation of Title VII, the NYSHRL, and the NYCHRL. *See* Compl.

## ANALYSIS

I.      Standard of Review

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.  "Although a party opposing summary judgment need not prove its evidence in a form admissible at trial or under the evidentiary standard which will be required, it must show facts sufficient to enable a reasonable mind to conclude that a material dispute of fact exists." *Healy v. Chelsea Res. Ltd.*, 736 F. Supp. 488, 491–92 (S.D.N.Y. 1990) (citation omitted).  In deciding the motion, the Court views the record in the light most favorable to the nonmoving party.  *Koch*, 287 F.3d at 165.

The Court must be "cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question," and must "carefully scrutinize[ ]" the non-movant's affidavits and depositions for "circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks and citation omitted).  That said, summary judgment is warranted if the

opposing party "relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Figueroa v. N.Y. Health and Hosps. Corp.*, 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007) (internal quotation marks and citation omitted).  To defeat summary judgment, the opposing party must set forth "concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).

II.    <u>Statute of Limitations</u>

Title VII's statute of limitations bars claims based on events occurring more than 300 days before filing a charge of discrimination with the EEOC.  *Riddle v. Citigroup*, 449 Fed. App'x 66, 69 (2d Cir. 2011) (citing 42 U.S.C. §§ 2000e-5(e)(1), (f)(1) (Title VII)).  Although discrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation, "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," a continuing violation may be found.  *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).  If a plaintiff shows a continuing violation occurred, she is entitled to have the court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred.  *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996).

The statute of limitations for actions under NYSHRL and NYCHRL is three years.  N.Y. Civ. Prac. L. & R. § 214(2); N.Y.C. Admin. Code § 8-502(d).  Although the Second Circuit has not yet resolved the question of whether an EEOC charge tolls the statute of limitations for NYSHRL and NYCHRL claims, many courts in this district have concluded that it does.  *See, e.g.*, *Riccardo v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 4891, 2016 WL 7106048, at *6 (S.D.N.Y. Dec. 2, 2016), *report and recommendation adopted sub nom. United States v. N.Y.C. Dep't of*

*Educ.*, No. 16 Civ. 4291, 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017).  The continuing violation

doctrine applies equally to NYSHRL and Title VII claims, but is construed more liberally with

respect to NYCHRL claims.  *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302–03 (S.D.N.Y.

2016).

Hostile work environment claims, however, may "be based on events outside

the statute of limitations period as long as (1) the acts occurring before the . . . cutoff constitute

'part of the same actionable hostile work environment practice,' and (2) at least one act

contributing to the claim occurs within the filing period."  *Clarke v. Intercontinental Hotels Grp.,*

*PLC*, No. 12 Civ. 2671, 2013 WL 2358596, at *8 (S.D.N.Y. May 30, 2013) (quoting *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002)).

Espinosa has successfully invoked the continuing violation doctrine.  Her sworn

statements detail Huntley's constant screaming, micromanaging, berating, and humiliation and

describe specific, connected instances of harassment adequate to show continuity in the alleged

conduct.  *See, e.g.*, EEOC Charge ¶¶ 16–17, 21–23, 25–26, 29–31, 40, 60, 64.  Espinosa states

that Huntley "banged the table when [she] tried to talk," "used a patronizing voice," and

"humiliated [her] in front [of] male members [of] the team."  Espinosa Aff. ¶ 6.  She notes that

he scrutinized her requests to work from home more than her male team members' requests, *id.*

¶ 10, and that he treated her and another woman on the team differently from the men on the

team by belittling, screaming at, and berating them, *id.* ¶¶ 13, 17; Espinosa Tr. at 343:21–345:17;

EEOC Charge ¶¶ 51–54.  Espinosa "often left meetings humiliated and distraught," EEOC

Charge ¶ 30, and recalls that she "tried to avoid him and stopped speaking at meetings," *id.*, and

that Huntley "repeatedly" took credit for her work, *id.* ¶ 32.  She averred that "she almost never

used her sick days . . . because she was afraid of . . . Huntley's anger."  *Id.* ¶ 41.  The "three

years of belittling and degrading" behavior Espinosa describes, *id.* ¶ 79, shows that there was no interruption in his behavior toward her, and that her repeated complaints about Huntley's conduct did not change her circumstances, *id.* ¶¶ 35–39, 46–50, 55, 69–74.  Accordingly, Espinosa is entitled to invoke the continuing violation theory with respect to her claims. *Cornwell*, 23 F.3d at 704 ("[A] continuing violation may be found where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.").

III.     Age and Race Discrimination

Defendant contends that Espinosa's age and race discrimination claims must be dismissed because she failed to exhaust her administrative remedies.  Def. Reply at 1–2, ECF No. 66.  The Court agrees.  Under Title VII, "a claimant may bring suit in federal court only if she has filed a timely [charge] with the EEOC and obtained a right-to-sue letter."  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001).  Title VII claims not raised in a charge may, however, "be brought in federal court if they are 'reasonably related' to the claim filed with the agency."  *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)).  The Second Circuit has recognized three situations in which a claim may be found to be reasonably related: (1) "where 'the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) "where the complaint is 'one alleging retaliation by an employer against an employee for filing an EEOC charge'"; and (3) "where the complaint 'alleges further incidents of

discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (quoting *Butts*, 990 F.2d at 1402–03).

Applying the foregoing principles, the Court concludes that Espinosa cannot assert age or race discrimination claims in this action.  Her EEOC charge alleges only gender discrimination under Title VII.  *See* EEOC Charge.  Moreover, the age and race discrimination claims are not "reasonably related" to her gender discrimination claims.  *See, e.g.*, *Hawkins v. Wegmans Food Mkt., Inc.*, 224 F. App'x 104, 105 (2d Cir. 2007) (summary order) (holding that age and race discrimination claims are not "reasonably related" to gender and disability claims in EEOC charge); *Gronowicz v. Coll. of Staten Island*, 359 F. Supp. 2d 243, 248 (N.D.N.Y. 2005) ("Courts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related.").

Accordingly, Defendant's motion for summary judgment as to Espinosa's age and race discrimination claims is GRANTED.

IV.  <u>Gender Discrimination</u>

A.  Title VII and NYSHRL

Espinosa contends that she was fired because of her gender.  Pl. Mem. at 23–25, ECF No. 58.  The framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) guides the Court's analysis of an intentional discrimination claim under Title VII and the NYSHRL. *Brennan v. Metro. Opera Ass'n. Inc.*, 192 F.3d 310, 316 n.2 (2d Cir. 1999) ("Employment discrimination claims brought under the NYSHRL are analyzed identically to claims under . . . Title VII.").  A plaintiff must first make out a *prima facie* case of discrimination by showing (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment

action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of the plaintiff's membership in the protected class. *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001). If a *prima facie* case is established, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse decision. *Id.* If the defendant sets forth a legitimate non-discriminatory reason, it "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding" that the reason merely serves as pretext for discrimination. *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The Court must "be careful not to second-guess an employer's business judgment that it makes in good faith"; indeed, in order to show pretext, a plaintiff must show that the defendant's nondiscriminatory reason is not credible *and* that "it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1225–26 (2d Cir. 1994).

Espinosa can establish a *prima facie* case of discrimination. First, she is a woman, and therefore, a member of a protected class. Espinosa Aff. ¶ 2.

Second, Espinosa can demonstrate that her job performance was satisfactory. To evaluate her performance, courts look to the employer's criteria for job performance, not its own standards. *See Thornley v. Penton Publ'g, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). To this end, the Court will examine Defendant's assessments of Espinosa's performance. Defendant submitted Espinosa's annual reviews for five years. The Court rejects characterization of Espinosa as having "consistent performance issues." Def. Mem. at 3–8, 13–14, ECF No. 52. In 2013, Espinosa "me[t] expectations" in all seven categories evaluating her commitment to Defendant's mission, and was between "fully competent" and "expert/role model" in five out of six skills

categories. ECF No. 53-11 at 10–13. In 2014, Espinosa again "me[t] expectations" in all seven

categories evaluating her commitment to Defendant's mission, and was between "fully

competent" and "expert/role model" in five out of six skills categories. ECF No. 53-12 at 2–6.

When asked if she "[p]erforms other duties as required," Huntley rated Espinosa one point shy of

being an "expert/role model" and stated that she "has shown that she can perform tasks as

requested of her." *Id.* at 6. On March 13, 2015, Espinosa met with a human relations

representative, where she discussed Huntley's behavior. Pl. 56.1 ¶¶ 183–184. About a month

later, on April 21, 2015, Def. 56.1 ¶ 66, Espinosa received her annual review that listed her as

"need[ing] improvement," for the first time, in three out of seven categories evaluating her

commitment to Defendant's mission, and between "learning/development" and "fully

competent" in three out of six skills categories. ECF No. 53-12 at 10–15.

The Court notes, however, that Huntley still wrote that Espinosa "ha[d] shown great

prowess in her ability to use" design software, *id.* at 13, that she was "an asset in support of

[w]eb [o]perations," *id.*, that she "continue[d] to work efficiently," *id.* at 14, that she was "a great

team player," *id.* at 14, and "valuable as a catch all for assistance to her peer designers as well as

the adjacent [o]perations and [e]ngineering teams," *id.* Her 2016 evaluation again ranked her as

"fully competent" in six out of seven mission-related categories, *id.* 17– 19, and between "fully

competent" and "expert/role model" in seven out of eight skills categories, *id.* at 19–22. Her

2017 evaluation, four months before she was fired, categorizes her as between "fully competent"

and "expert/role model" in more than half of the categories of evaluation. ECF No. 53-11 at 2–9.

On the basis of these reviews, Espinosa could establish satisfactory job performance. *See Smith*

*v. K & F Indus., Inc.*, 190 F. Supp. 2d 643, 648–49 (S.D.N.Y. 2002) (finding plaintiff had

established *prima facie* evidence of satisfactory job performance when she received positive evaluations until she informed her supervisors about her pregnancy).

Third, Espinosa has shown adverse employment actions. She was subjected to a hostile work environment. *See infra* § V; *Salerno v. City Univ. of New York*, No. 99 Civ. 11151, 2003 WL 22170609, at *11 (S.D.N.Y. Sept. 18, 2003) ("An adverse employment action can take the form of a hostile work environment."). She was also fired. EEOC Charge ¶¶ 82–85; *Nidzon v. Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 349 (S.D.N.Y. 2010). However, her poor performance evaluation does not constitute an adverse employment action because she testified that neither her salary, nor her hours, nor her supervisor, nor her work conditions materially changed. Def. 56.1 ¶ 131; Espinosa Tr. at 297:12–298:10; *Borzon v. Green*, No. 16 Civ. 7385, 2018 WL 3212419, at *8 (S.D.N.Y. June 29, 2018), *aff'd*, 778 F. App'x 16 (2d Cir. 2019) ("[A] negative performance review is not itself an adverse employment action, and a subsequent termination does not transform it into one."). Espinosa's argument that being subjected to disparate treatment is itself an adverse employment action also fails because an adverse employment action is an element of a disparate treatment claim. Pl. Mem. at 15–20; *see Schwartz v. New York State Ins. Fund*, No. 09 Civ. 9172, 2011 WL 13383529, at *9 (S.D.N.Y. Feb. 22, 2011) ("Plaintiff's allegations that she was assigned an unfair caseload and hearing calendar may be sufficient to meet the 'adverse employment action' requirements for both disparate treatment and retaliation claims").

Fourth, Espinosa adduces sufficient facts upon which the trier of fact may reasonably base an inference of gender discrimination. Direct evidence of discrimination is rare, and Espinosa need only show facts giving rise to an inference that her gender "played a motivating role in, or contributed to, the employer's decision." *Renz v. Grey Advert., Inc.*, 135 F.3d 217,

222 (2d Cir. 1997). She states that Huntley "add[ed] very racey videos to the end of his

meetings," Espinosa Aff. ¶ 5, and that when she approached human resources, she was told that

"what [she] was experiencing was <u>not</u> discrimination," despite not having mentioned a

discrimination claim, *id.* ¶ 19; Ex. M at 2:16–19. She submitted text messages with a co-worker

who states that "[Huntley] seems to be ok w/ the blondes," which the co-worker "noticed [ ]

immediately." ECF No. 59-2 at 5. Espinosa further testified that Huntley hired women with a

particular appearance. Espinosa Tr. at 322:21–24. These instances could support the inference

that Huntley's ostensibly gender-neutral conduct was gender-based. *See Marks v. Nat'l*

*Commc'ns Ass'n, Inc.*, 72 F. Supp. 2d 322, 329 (S.D.N.Y. 1999) ("Undue preoccupation with

what female employees look like is not permissible under anti-discrimination laws if the same

kind of attention is not paid to male employees." (quoting *Drinkwater v. Union Carbide*

*Corp.*, 904 F.2d 853, 862–63 (3d Cir. 1990)).

Defendant asserts that hiring a woman to replace Espinosa precludes an inference of

gender discrimination. Def. 56.1 ¶¶ 132, 154; Def. Mem. at 12. This is not so. *See Dais v. Lane*

*Bryant, Inc.*, No. 97 Civ. 2011, 2000 WL 145755, at *2 n.4 (S.D.N.Y. Feb. 8, 2000) ("Likewise,

the fact that an employer hired someone of the same gender as the plaintiff does not itself defeat

an otherwise legitimate inference of gender discrimination."). Defendant also argues that

Huntley's promoting multiple female employees and treating them more favorably than Espinosa

further diminishes her claims. Def. Mem. at 12. The Court disagrees. *Brown v. Henderson*, 257

F.3d 246, 252 (2d Cir. 2001) ("[D]iscrimination against one employee cannot be cured, or

disproven, solely by favorable, or equitable, treatment of other employees of the same race or

sex."). Defendant is also misguided in its assertion that Espinosa cannot show gender

discrimination without identifying similarly-situated comparators. Def. Mem. at 10–12; *Brown*,

257 F.3d at 253 ("[T]hough it is helpful in proving sex discrimination, we have held that it is not strictly necessary for a plaintiff to identify an employee who was treated more favorably than the plaintiff and who was similarly situated to the plaintiff, except for being of the opposite sex.").

Accordingly, Espinosa has established a *prima facie* case of discrimination regarding her termination.

Although Defendant asserts that Espinosa's job performance was the reason for her termination, Def. 56.1 ¶¶ 140–42, her evaluation history could itself support an inference that this reason is pretextual.  After receiving a negative review in 2015, her 2016 and 2017 evaluations ranked her highly: she was "fully competent," ECF No. 53-12 at 17–19, and between "fully competent" and "expert/role model" in a majority of the skills categories, *id.* at 19–22; ECF No. 53-11 at 2–9.

Accordingly, there is a triable issue of fact regarding whether Espinosa was subjected to gender discrimination under Title VII and the NYSHRL and Defendant's motion for summary judgment on these issues is DENIED.

### B.  NYCHRL

NYCHRL discrimination claims are also analyzed under the *McDonnell Douglas* burden-shifting standard.  *Sellers v. Royal Bank of Can.*, No. 12 Civ. 1577, 2014 WL 104682, at *10 (S.D.N.Y. Jan. 8, 2014).  The NYCHRL, however, must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011).  Accordingly, claims brought under the NYCHRL are analyzed "'independently from and more liberally than' federal or state discrimination claims." *Margherita v. FedEx Express*, 511 Fed. App'x 71, 72 (2d Cir. 2013) (summary order) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d

Cir. 2009)).  Interpretations of analogous state and federal statutes may "be used to aid in interpretation of [the NYCHRL]" to the extent such interpretations serve as "a *floor* below which" the NYCHRL cannot fall.  *Loeffler*, 582 F.3d at 278 (citation omitted) (emphasis in original).  For example, prevailing under the NYCHRL requires showing that the protected trait was only a "motivating factor," rather than the but-for cause, of an adverse employment action.  *Weiss v. JPMorgan Chase & Co.*, No. 06 Civ. 4402, 2010 WL 114248, at *4 (S.D.N.Y. Jan. 13, 2010).  Even given the more liberal standard, the NYCHRL is not "a general civility code, and petty slights and trivial inconveniences are not actionable." *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450 (E.D.N.Y. 2013) (internal quotation marks and citation omitted).  "The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination" and will be entitled to summary judgment on that basis if the record establishes as a matter of law "that discrimination played *no* role in its actions."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013) (emphasis in original) (internal quotations marks, alteration, and citation omitted).

Because Espinosa has adequately demonstrated a gender discrimination claim under the NYSHRL, she has also done so under the broad and remedial standards of the NYCHRL.  Local Civil Rights Restoration Act of 2005, N.Y.C., N.Y., Local Law No. 85, at § 1 (Oct. 3, 2005) ("[F]ederal and state civil rights laws [are] a floor below which the City's Human Rights law cannot fall.").

V.    Retaliation

To establish a *prima facie* case of retaliation under Title VII and the NYSHRL, a plaintiff must generally show that: (1) she engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) her employer was aware of that activity; (3) she suffered a materially

adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Cretella v. Liriano*, 633 F. Supp. 2d 54, 74 (S.D.N.Y. 2009), *aff'd*, 370 Fed. App'x 157 (2d Cir. 2010).  The NYCHRL defines the activities protected against retaliation more broadly and "protects plaintiffs who oppose any practice forbidden under" the NYCHRL.  N.Y.C. Admin. Code. § 8-107(7).  Further, "[r]ather than requiring a plaintiff to show an adverse employment action, [the NYCHRL] only requires [her] to show that something happened that was reasonably likely to deter a person from engaging in protected activity."  *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752, 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020) (alterations in original) (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012)).  "Otherwise, a prima facie case of retaliation faces the same requirements under the NYCHRL as under the NYSHRL."  *Malena*, 886 F. Supp. 2d at 362.

Retaliation claims under all three statutes "are analyzed under the same 'burden-shifting' framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*."  *Apionishev v. Columbia Univ.*, No. 09 Civ. 6471, 2012 WL 208998, at *7 (S.D.N.Y. Jan. 23, 2012) (internal citations omitted).  Assuming Plaintiff sustains her initial burden of establishing a *prima facie* claim for retaliation, "a presumption of retaliation arises [and t]he defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action."  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citations omitted).  Upon such a showing by the defendant, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action."  *Id.*

Espinosa has not established a *prima facie* case of retaliation because she has not shown that she engaged in protected activity.  She states that she made informal complaints on several occasions before receiving her performance evaluation in April 2015, but those complaints did

16

not clearly convey that she was complaining about prohibited conduct. *See, e.g.*, Pl. 56.1 ¶¶ 166, 183–85, 188; Espinosa Tr. at 75:5–8, 222:13–224:25; EEOC Charge ¶¶ 71–72; Espinosa Aff. ¶¶ 17, 19, 22. She states that she "didn't even know what discrimination was" when she complained to human resources about Huntley's behavior. Espinosa Aff. ¶ 19. These complaints do not constitute protected activity. *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) ("[I]nformal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII. Generalized complaints about a supervisor's treatment are insufficient."); *Zokirzoda v. Acri Cafe Inc.*, No. 18 Civ. 11630, 2020 WL 359908, at *4 (S.D.N.Y. Jan. 22, 2020) ("The retaliation provision of [the NYCHRL] applies only to adverse actions taken by employers that bear some causal connection to activity protected under [it], *i.e.*, opposing discrimination.").

Accordingly, Defendant's motion for summary judgment as to Espinosa's retaliation claims is GRANTED.

VI.  Hostile Work Environment[4]

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has held that the phrase "terms, conditions, or privileges of employment" evinces a congressional intent "to strike at the entire spectrum of disparate treatment" and thus creates a

---

[4] Espinosa's complaint does not allege her hostile work environment claims under Title VII, the NYSHRL, and the NYCHRL as separate counts. *See generally* Compl. However, Federal Rule of Civil Procedure 10(b) only requires each claim to be stated in a separate count where doing so would promote clarity. Fed. R. Civ. P. 10(b). Espinosa alleges that she was subjected to a hostile work environment throughout her complaint. Compl. ¶¶ 28–38, 73–78, 92, 98, 103, 108, 114, 120. Accordingly, the Court will evaluate her hostile work environment claims. *Williams v. AAA S. New Eng.*, No. 13 Civ. 855, 2015 WL 5474236, at *4 (S.D.N.Y. Sept. 4, 2015) ("Although plaintiff does not bring this claim as a separate count, plaintiff alleges she was subject to a hostile work environment").

cause of action for hostile work environment claims. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (citations and internal quotation marks omitted).  To establish a hostile work environment claim, a plaintiff must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks and citations omitted).

However, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  Also, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at 21–22.  Therefore, the environment must be reasonably perceived, and actually perceived, as hostile or abusive. *Id.* at 22.  Additionally, it is "axiomatic that mistreatment at work, whether through subjection to a hostile environment or through [other means], is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic," such as race or gender. *Brown*, 257 F.3d at 252 (citation omitted).  Thus, personal animus without evidence of race or gender bias is insufficient to establish a claim under Title VII. *See Lennert–Gonzalez v. Delta Airlines, Inc.*, No. 11 Civ. 1459, 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013).

Courts must also find a "basis for imputing the conduct creating a hostile work environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013).  There can be no imputed liability unless (1) the complained-of conduct was done by a supervisor, or (2) "the employer failed to provide a reasonable avenue for complaint or that it

knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 190 (2d Cir. 2010) (internal quotation marks and citation omitted).  NYSHRL applies the same standard.  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011).

Under the NYCHRL the standard for maintaining a hostile work environment claim is lower.  "The [NYCHRL] was intended to be more protective than the state and federal counterpart."  *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. 2006). The NYCHRL imposes liability for harassing conduct that does not qualify as "severe or pervasive," and "questions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability."  *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38 (N.Y. App. Div. 2009) (citing *Farrugia*, 820 N.Y.S.2d at 725).  Espinosa need only adduce evidence of "the existence of unwanted gender-based conduct" to survive summary judgment.  *Id.* at 38.  Still, even under the NYCHRL, "petty slights or trivial inconveniences . . . are not actionable."  *Id*. at 41.

Defendant has failed to establish that there is no dispute as to any material facts regarding whether Espinosa was subjected to a hostile work environment because she is a woman. Espinosa has presented sufficient evidence—for instance, her allegation that "on many occasions" Huntley "add[ed] very racey videos to the end of his meetings," Espinosa Aff. ¶ 5, and that Huntley screamed, banged his hands on the table, and used a patronizing voice, more towards her more than the rest of the team, Def. 56.1 ¶¶ 100–01; Pl. 56.1 ¶¶ 160–61; EEOC Charge ¶¶ 18–19, 21, 24–30—such that a reasonable jury crediting her version of events could find that she was the victim of a hostile work environment based on her gender.  In addition, a rational fact-finder could conclude that Espinosa subjectively experienced a hostile work

environment.  She perceived that she was being treated differently because of her appearance.

She testified that Huntley hired women "because they were beautiful, cute or whatever."

Espinosa Tr. at 322:21–24.  She also testified that Huntley hired a female friend of his as a

project manager, and that, "at some point during [a] meeting it came out that she was engaged or

she had a boyfriend or something," and Huntley appeared disappointed.  *Id.* at 322:4–20.  She

noticed that women Huntley hired were all young and white, unlike her.  EEOC Charge ¶ 79.

Espinosa states that she was "humiliated" and that she wondered if there was "something wrong

with [her]."  Espinosa Aff.  ¶¶ 6, 15.  She states that Huntley scrutinized her requests to work

from home more than her male colleagues' requests, *id.* ¶ 10, and that she "tried to avoid him

and stopped speaking at meetings," EEOC Charge ¶ 30.  She averred that "she almost never used

her sick days . . . because she was afraid of . . . Huntley's anger."  *Id.* ¶ 41.  The "three years of

belittling and degrading" behavior Espinosa describes, *id.* ¶ 79, shows that the allegedly

unwarranted abuse she was subjected to was severe and permeated her workplace.  Espinosa also

alleges that Dickinson was aware of and witnessed Huntley's behavior, but he failed to take

appropriate corrective action.  *Id.* ¶¶ 35–39, 46–50, 55, 69–74.  Accordingly, there is a triable

issue of fact as to whether Huntley's behavior can be imputed to Defendant.

Espinosa, therefore, has raised a material issue of fact as to her hostile work environment

claim under Title VII and the NYSHRL.

Because Espinosa has adequately demonstrated a hostile work environment claim under

the NYSHRL, she has also done so under the broad and remedial standards of the NYCHRL.

N.Y.C. Local Law No. 85, at § 1.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment on Plaintiff's age discrimination, race discrimination, and retaliation claims under Title VII, the NYSHRL, and the NYCHRL is GRANTED, and the balance of its motion is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 51.

SO ORDERED.

Dated: March 19, 2021
       New York, New York

_____
ANALISA TORRES
United States District Judge